UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
LUKAS SHAYO,

                          Plaintiff,

     -against-

CENTSAI INC., ARINDAM NAG, and DORIA LAVAGNINO,

                          Defendants.
-------------------------------------------------------------------x

**REPORT AND RECOMMENDATION**

23-CV-365
(Irizarry, J.)
(Marutollo, M.J.)

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

       Plaintiff Lukas Shayo commenced this action on January 19, 2023, alleging that his former employer, CentSai Inc. ("CentSai"), and its owners and operators Arindam Nag ("Nag") and Doria Lavagnino ("Lavagnino") (collectively, "Defendants") failed to pay him wages for work performed in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and New York Labor Law ("NYLL") §§ 650 *et seq.*, failed to provide him with timely and full payment in violation of the Freelance Isn't Free Act ("FIFA") N.Y.C. Admin. Code § 20-929, failed to provide him with a written contract in violation of FIFA § 20-928, and retaliated against him in violation of FIFA § 20-930. *See generally* Dkt. No. 1 ("Compl."). Plaintiff also brings breach of contract and unjust enrichment claims. *Id.*

       Currently pending before this Court, on a referral from the Honorable Dora L. Irizarry, United States District Judge, is Plaintiff's Motion for Default Judgment. Dkt. No. 12[1]; *see also* May 4, 2023 Referral Order.

---

[1] Plaintiff's Motion for Default Judgment is styled on the docket as "First MOTION for Default Judgment Against All Defendants." Dkt. No. 12.

In light of Plaintiff's failure to comply with Local Civil Rules 7.1 and 55.2(c), and for the reasons set forth below, the Court respectfully recommends denying Plaintiff's Motion for Default Judgment without prejudice, and with leave to renew the filing upon curing the deficiencies detailed herein.

**I.     Background**

   **A.     Factual Allegations**

The following facts are taken from the Complaint, Plaintiff's motion, and the attachments filed in support of Plaintiff's motion; the facts are assumed to be true for the purposes of this motion. *See Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV) (MMH), 2023 WL 6338666, at *1 (E.D.N.Y. Sept. 29, 2023) (citing *Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 188 (2d Cir. 2015)). However, "a court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." *Green v. Schriro*, No. 18-CV-01641 (PKC), 2019 WL 1765220, at *5 (E.D.N.Y. Apr. 22, 2019) (quoting *In Re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405-06 (S.D.N.Y. Jun. 29, 2001)).

Plaintiff is a former employee at CentSai, a business that "runs a website that teaches individuals and entities about finance" by "publishing articles about finance on its website." Compl. ¶¶ 23-24. Plaintiff currently resides in Brooklyn in the State of New York. *Id.* ¶ 2. CentSai is a Delaware corporation that is not registered to do business in the State of New York but has a principal place of business at 455 7th Street, Brooklyn, New York 11215. *Id.* ¶¶ 3-4. At all relevant times, CentSai has been a "business or enterprise engaged in interstate commerce

2

employing more than two (2) employees and earning gross annual sales over $500,000." *Id.* ¶¶ 5-6.

Nag is the Chief Executive Officer and an owner of CentSai who resides in Kings County in the State of New York. *Id.* ¶¶ 11-12. Lavagnino is the Editor-in-Chief and an owner of CentSai who resides in Kings County in the State of New York. *Id.* ¶¶ 13-14. Nag and Lavagnino possessed the authority to hire and fire employees, controlled terms and conditions of employment, determined rates and methods of compensation, and maintained employment records. *Id.* ¶¶ 17-18. Plaintiff and Defendants' other employees "regularly handled and used tools and equipment that were moved in or produced for interstate commerce." *Id.* ¶ 7.

According to the Complaint, Plaintiff was hired as an unpaid editorial intern on or about June 1, 2020. *Id.* ¶¶ 28-29. Plaintiff alleges, however, that "[i]n actuality," Plaintiff "performed the work of an employee from June 1, 2020, to August 6, 2020 without being paid wages for the approximately 280 hours of work performed." *Id.* ¶ 29. Other unpaid interns were hired during Plaintiff's employment at CentSai. *Id.* ¶ 30. Plaintiff received one or two days of training as an editor by Defendants. *Id.* ¶ 32. This was the same training that would "be given to an employee." *Id.*

After receiving on-the-job training, Plaintiff began editing articles that the Defendants would publish on their website. *Id.* ¶¶ 32-33. Towards the end of Plaintiff's unpaid internship on or about August 6, 2020, Defendants offered Plaintiff a paid position. *Id.* ¶ 37. Defendant's initial offered rate was $12.00 per hour. *Id.* Defendants also asked Plaintiff whether he was willing to work without a contract. *Id.* Plaintiff informed Defendants that the offered rate of $12.00 per hour is below New York City's minimum wage. *Id.* ¶ 38. Defendants later informed Plaintiff that he

3

would be paid $15.00 as an independent contractor.[2] Plaintiff began working for Defendants as an Editorial Assistant on or about August 10, 2020.[3] *Id*. ¶ 39. No independent contractor agreement was executed by the parties. *Id.* ¶ 41.

As an Editorial Assistant, Plaintiff was supervised by Nag and Lavagnino as well as non-party individuals Conner McIrnerney and Kelly Meehan. *Id*. ¶¶ 44-48, 56. Defendants assigned "small tasks" to Plaintiff (*id*. ¶ 46); required Plaintiff to attend regular work meetings (*id*. ¶ 47); administered weekly performance reviews (*id*. ¶¶ 48-49); administered training sessions (*id*. ¶ 50); required Plaintiff to attend client meetings (*id*. ¶ 52); and reviewed and approved Plaintiff's work. *Id*. ¶¶ 55-56.

Plaintiff submitted invoices to Defendants to be paid for work performed.[4] *Id*. ¶¶ 61-78, 88. On September 3, 2020, Plaintiff submit his first invoice for $900.00. *Id.* ¶ 61. Plaintiff submitted this invoice again on September 28, 2023 as a payment reminder. *Id.* Plaintiff was not paid until October 6, 2020. *Id.* ¶ 62. Plaintiff submitted a second invoice on October 1, 2020 for $1,275. *Id.* ¶ 64. Plaintiff submitted the second invoice again on November 17, 2020 as a payment reminder. *Id.* ¶ 65. Defendants remitted payment for the second invoice on December 1, 2020. *Id.*

---

[2] It remains unclear, from the sequence of events, whether Plaintiff accepted Defendants' offer to work as an Editorial Assistant at rate of $12.00 per hour or whether later negotiations, after notification that the offered rate was below the City's minimum wage, resulted in an increase to $15.00. *See id.* ¶¶ 37-40. As written, it appears that Plaintiff began working for Defendants on or about August 10, 2020, and was later informed of a pay increase to $15.00. *Id.*

[3] The Complaint's narrative raises unanswered questions about the sequence of events. First, the Complaint does not address Plaintiff's response to Defendants' request for contract-free work, or, for that matter, whether further bargaining ensued. Compl. ¶ 37. Next, Plaintiff alleges that he was later informed that he "would be paid $15.00 as an independent contractor." *Id.* ¶ 40. But the parties "never fully executed a valid independent contractor agreement." *Id.* ¶ 41. The Complaint only notes that Plaintiff "was paid . . . as an independent contractor by Defendants." *Id.* ¶ 42. Additionally, the Complaint does not indicate whether further bargaining took place between the parties regarding Plaintiff's classification as an employee or an independent contractor—an important component of the FLSA analysis and notable omission.

[4] Plaintiff does not allege whether the practice of submitting invoices was completed at Defendants' request.

¶ 66.  Plaintiff submitted his third invoice on November 1, 2020 for $1,275.  *Id.* ¶ 67.  Plaintiff submitted his fourth invoice for $1,275 on December 1, 2020.  *Id.* ¶ 68.  On December 17, 2020, Defendants remitted payment for the third invoice in the amount of $500.  *Id.* ¶ 71.  On December 28, 2020, Defendants remitted payment in the amount of $2,050 to Plaintiff.  *Id.* ¶ 75.

Plaintiff was paid via Venmo—a mobile peer-to-peer payment application—instead of "the usual direct deposit payment method."[5]  *Id.* ¶¶ 71-72.  While employed at CentSai, Plaintiff was paid "a total of three times via the personal Venmo account of [Defendant] Lavagnino."[6]  *Id.* ¶ 73.  On January 1, 2021, Plaintiff submitted his fifth invoice for $1,425 on January 1, 2021.  *Id.* ¶ 76.  Defendants remitted payment on February 11, 2011.  *Id.*  Plaintiff submitted his sixth invoice for $1,200 on February 1, 2021.  *Id.* ¶ 77.  Defendants remitted payment to Plaintiff on March 10, 2021.  *Id.*  Plaintiff submitted his eighth invoice on $1,425 on April 1, 2021.  *Id.* ¶ 78.  Defendants remitted payment to Plaintiff on June 25, 2021.  *Id.*  Defendants purportedly continued a practice where they remitted late payments to Plaintiff, which "include[s] instances in which [] Plaintiff was paid up to . . . 66 days after [submitting an] invoice to Defendants."  *Id.* ¶ 79, 84.

On or about December 2021, Plaintiff received a raised to $20.00 per hour.  *Id.* ¶ 80.  On or about February 10, 2022, Plaintiff's responsibilities expanded to include work involving project management. *Id.* ¶ 81.  On or about March 7, 2022, Plaintiff told Nag that he did not want the project management responsibility; Defendants purportedly denied that request.  *Id.* ¶¶ 82-83.

---

[5] Plaintiff, in his Complaint, does not allege whether the parties agreed on a payment method or how past invoices have been fulfilled.  The Court interprets the phrase "instead of the usual direct deposit payment method" (Compl. ¶¶ 71-72) to mean that Defendants have, on at least one occasion, remitted payment to Plaintiff via direct deposit.

[6] Plaintiff does not allege whether he ever objected to being paid via Venmo or whether Venmo became an acceptable payment method.

On March 14, 2022, Plaintiff emailed Nag regarding the non-payment of an invoice. *Id.* ¶ 80. Plaintiff was advised by Nag that payment would be remitted once an "expected payment" was received from a client. *Id.* Plaintiff alleges that Nag became "visibly angered" by Plaintiff's complaints regarding late payment and noted that Plaintiff "couldn't expect timely payments because CentSai's clients were not making prompt payments." *Id.* ¶ 85. Plaintiff believed that Nag was angry at him and that his position "was now insecure and at jeopardy" by complaining of late payments. *Id.*

On the same day, Plaintiff alleges that he was "forced to resign his position due to Defendants' repeated late payments." *Id.* ¶ 86. Plaintiff, until his last day of work on March 31, 2022, worked to complete tasks and train his replacement. *Id.* ¶ 87. On his last day, Plaintiff submitted his twentieth and final invoice for $2,780 to Defendants. *Id.* ¶ 88. As of January 19, 2020—the date this action was commenced—Defendants have not remitted payment to Plaintiff in full satisfaction of the final invoice. *Id.* ¶ 90.

**B.     Procedural History**

Plaintiff filed the Complaint on January 19, 2023. *See* Dkt. No. 1. On January 23, 2023, the Clerk of Court issued summonses for all Defendants. Dkt. No. 3. Plaintiff properly served CentSai on January 28, 2023. Dkt. No. 6. Plaintiff properly served Nag on January 28, 2023. Dkt. No. 7. Plaintiff properly served Lavagnino on January 28, 2023. Dkt. No. 8. The Defendants' answers were due on February 20, 2023. Dkt Nos. 6-8. No answers or responses have been interposed by Defendants.

On March 27, 2023, Plaintiff requested a Certificate of Default from the Clerk of Court and submitted three affidavits of service in support. Dkt No. 9. On April 3, 2023, Plaintiff's request was denied as the affidavits submitted failed to "state what location/time the parties were

6

served as well as descriptions of the individuals who accepted service." *See* Text Order dated April 3, 2023.  On April 10, 2023, Plaintiff renewed his request for a Certificate of Default.  Dkt. No. 10.  On April 11, 2023, the Clerk of Court entered a default noting that Defendants have "failed to appear or otherwise defend this action."  Dkt. No. 11.  On April 13, 2023, the Honorable Ramon E. Reyes, Jr., then-United States Magistrate Judge, ordered Plaintiff to move for default judgment on or before April 27, 2023.  *See* Electronic Order dated April 13, 2023.

On April 27, 2023, Plaintiff filed a Motion for Default Judgment styled "First MOTION for Default Judgment *Against All Defendants*" (Dkt. No. 12 (capitalization and emphasis in original)) containing (1) a Notice of Motion (Dkt. No. 12-1); (2) a copy of the Complaint (Dkt. No. 12-2); and (3) supporting affidavits and exhibits (*Id.*).  Plaintiff seeks default judgment "jointly and severally for unpaid wages in the amount of $6,980.00; liquidated damages in the amount of $6,980.00 for unpaid wages; liquidated damages in the amount of $16,912.50 for untimely payment of wages; $5,000.00 for failing to provide a wage statement in violation of NYLL § 195; $5,000.00 for failing to supply Plaintiff wage notice as required by NYLL § 195; cost and fees of $552.00; and $26,280.00 in attorney's fees; amounting in all to $67,704.50."  Dkt. No. 12-2.

On April 28, 2023, Plaintiff filed a Certificate of Service of the Motion for Default Judgment to Defendants at 455 7th Street, Brooklyn, NY 11215.  Dkt. No. 13.  On May 4, 2023, the Motion for Default Judgment was referred to Judge Reyes.  *See* May 4, 2023 Referral Order.  On November 13, 2023, this case was reassigned to the undersigned.  *See* Docket Entry dated November 13, 2023.

## II.   Standard for Default Judgment

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment."  *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011).  At the first

7

step, the Clerk of Court enters a party's default after an affidavit or other evidence shows that the "party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a); *see Esquivel*, 2023 WL 6338666, at *3 ("when a party uses an affidavit or other proof to show that a party has 'failed to plead or otherwise defend' against an action, the clerk shall enter a default." (citing Fed. R. Civ. P. 55(a)). "If a claim is for 'a sum certain or a sum that can be made certain by computation,' the clerk can enter judgment." *Id.* (citing Fed. R. Civ. P. 55(b)(1)).

At the second step, and "[i]n all other cases, the party must apply to the court for a default judgment." *Id.* (citing Fed. R. Civ. P. 55(b)(2)). To "enter or effectuate judgment", the Court is empowered to: "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2).

The Second Circuit "generally disfavor[s]" default judgment and has repeatedly expressed a "preference for resolving disputes on the merits." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). Nevertheless, in evaluating a motion for default judgment, a court accepts as true the plaintiff's well-pleaded factual allegations, except those relating to damages. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974). A plaintiff bears the burden of alleging "specific facts," rather than "mere labels and conclusions" or a "formulaic recitation of the elements," so that a court may infer a defendant's liability. *Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314 (SJ) (RER), 2015 WL 5561033, at *3 (E.D.N.Y. Sept. 1, 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), *report and recommendation adopted*, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015)).

"In the context of a motion for default judgment on FLSA and NYLL claims, 'the plaintiff's recollection and estimates of hours worked are presumed to be correct.'" *Chen v. Oceanica Chinese Rest., Inc.*, No. 13-CV-4623, 2023 WL 2583856, at *6 (E.D.N.Y. Mar. 21, 2023) (Garaufis, J.) (quoting *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. Sep. 24, 2012)); *see also Santillan v. Henao*, 822 F. Supp. 2d 284, 294 (E.D.N.Y. Sep. 30, 2011) ("[I]n the absence of rebuttal by defendants, or where the employer has defaulted, as here, the employee's recollection and estimates of hours worked are presumed to be correct." (quotations, citations, and alterations omitted)).

The decision to grant or deny a default motion is "left to the sound discretion of a district court." *Esquivel*, 2023 WL 6338666, at *3 (quoting *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999)). A court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly established." *Chen*, 2023 WL 2583856, at *7 (quotations and citation omitted).

### III. Discussion

The Complaint contains two omissions which warrant the denial of Plaintiff's Motion for Default Judgment, to wit: Plaintiff fails to comply with the Local Civil Rules 7.1 and 55.2(c). But even if Plaintiff had complied with the Local Civil Rules, the Complaint contains deficiencies that would render default judgment inappropriate. For the reasons outlined below, this Court respectfully recommends that Plaintiff's Motion for Default Judgment be denied.

"A motion for default judgment will not be granted unless the party making the motion adheres to all of the applicable procedural rules." *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Engineers, Loc. 15, 15A, 15C & 15D, AFL-CIO v. Allstate Mapping & Layout, LLC*, No. 22-CV-1831 (PKC) (TAM), 2023 WL

9

1475389, at *1 (E.D.N.Y. Feb. 2, 2023) (quoting *Century Surety Company v. Adweek*, No. 16-CV-335 (ENV) (PK), 2018 WL 10466835, at *1 (E.D.N.Y. Jan. 9, 2018)). "[L]ocal rules have the force of law, as long as they do not conflict with a rule prescribed by the Supreme Court, Congress, or the Constitution." *See Fin. Servs. Vehicle Tr. v. Osmanaj*, No. 22-CV-7491 (RPK) (CLP), 2023 WL 7000935, at *2 (E.D.N.Y. Aug. 15, 2023) (citations and quotation marks omitted). "As harsh at it may seem," courts in this district "have repeatedly" denied motions for default judgment based on a movant's failure to adhere to Local Civil Rules. *Lugo v. Allstate Ins. Co.*, No. 19-CV-7150 (JMA) (JMW), 2022 WL 3928727, at *5 (E.D.N.Y. Aug. 10, 2022) (recommending plaintiff's motion for default judgment be denied where "notably absent from Plaintiff's motion [was] the Clerk's certificate of default, a copy of the Complaint, and a proposed form of default judgment"), *report and recommendation adopted*, 2022 WL 3914981 (E.D.N.Y. Aug. 31, 2022).

Here, in addition to the Motion for Default Judgment (Dkt. No. 12), Plaintiff filed the following documents in support of the Motion: a Notice of Motion (Dkt. 12-1), a copy of the Complaint (Dkt. No. 12-2), and supporting affirmations from Plaintiff's counsel with exhibits (Dkt. No. 12-2). Plaintiff also filed a Certificate of Service. *See* Dkt. No. 13.

Contrary to the strict rules set forth in Local Civil Rules, however, Plaintiff's submission is facially deficient on two procedural grounds: (i) failure to submit a supporting memorandum of law as required by Local Civil Rule 7.1; and (ii) failure to mail the motion papers to the last known addresses of the individual defendants as required by Local Civil Rule 55.2. For the reasons set forth below, Plaintiff failed to comply with Local Civil Rules 7.1 and 55.2.

### A.  Plaintiff failed to comply with Local Civil Rule 7.1

Plaintiff's Motion for Default Judgment violates Local Civil Rule 7.1 as it contains no memorandum of law. The Local Rules require that all motion papers contain, *inter alia*, a

"memorandum of law, setting forth the cases and other authorities relied upon in support of the motion, and divided, under appropriate heads, into as many parts as there are issues to be determined." Loc. Civ. R. 7.1(a)(2). The failure to comply with Local Rule 7.1 is enough on its own for a court to deny the motion. *See, e.g., Lopez v. Metro & Graham LLC*, No. 22-CV-332 (CBA) (RER), 2022 WL 18809176, at *3 (E.D.N.Y. Dec. 16, 2022), *report and recommendation adopted*, 2023 WL 2140418 (E.D.N.Y. Feb. 21, 2023) (denying a motion for default judgment where the submission did not include a memorandum of law); *Pompey v. 23 Morgan II, LLC*, No. 16-CV-2065 (ARR), 2017 WL 1102772, at *3 (E.D.N.Y. Feb. 13, 2017) (citing *Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314 (SJ) (RER), 2015 WL 5561033, at *2 n.4 (E.D.N.Y. Sept. 1, 2015), *report and recommendation adopted*, 2015 WL 5561180 (Sept. 21, 2015)) ("The absence of a memorandum of law that comports with the requirements of Rule 7.1 could alone form a basis for denying Plaintiff's motion.").

Plaintiff's failure to submit a memorandum of law also violates the Honorable Dora L. Irizarry's Individual Motion Practice and Rules. *See* Individual Motion Practice and Rules for Civil Cases, Section IV(E).[7] *See also Prepaid Ventures, Ltd. v. Compton,* No. 18-CV-2102, 2023 WL 2662311, at *2 (E.D.N.Y. Mar. 28, 2023) (Irizarry, J.) (striking a default judgment motion as deficient for failing to provide a supporting memorandum of law as required by Section IV(E) of [Judge Irizarry's] Rules). Indeed, "[t]he purpose of the filing of the memorandum of law is to inform the Court and the nonappearing defendants of the theories of law upon which the plaintiff relies." *See 1077 Madison St., LLC v. New York State Dep't of Taxation & Fin.*, No. 19-CV-954

---

[7] Section IV(E) reads, in part, "[o]nce the notation of default is entered, Plaintiff must move for default judgment by submitting a notice of motion, any necessary affirmations and exhibits, and a memorandum of law (not to exceed 25 pages), setting forth the grounds for awarding damages, attorneys' fees and costs, and file proof of service thereof to the defaulting party or parties." *See* Individual Motion Practice and Rules for Civil Cases of the Honorable Dora L. Irizarry, Section IV(E).

(NGG) (CLP), 2019 WL 7593275 (E.D.N.Y. Nov. 13, 2019), *report and recommendation adopted*, 2020 WL 249006, at *1 (E.D.N.Y. Jan. 16, 2020) (denying motion for a default judgment and foreclosure where the plaintiff did not submit a memorandum law with legal citations as to its theory of the case such that it was unclear on what legal grounds the plaintiff proceeded). "Given that in a default posture, a defendant has most likely never participated in an action, the Court and that defendant are uninformed of the legal conclusions that a plaintiff believes can be drawn from the facts alleged and claims stated in the operative pleading." *Dominguez v. Hernandez*, No. 21-CV-7051 (MKB)(VMS), 2023 WL 2575224, at *15 (E.D.N.Y. Feb. 22, 2023) *report and recommendation adopted*, 2023 WL 2574876 (E.D.N.Y. Mar. 20, 2023). "The Court and non-appearing defendant have also never been informed of how the plaintiff believes that the requirements for a default have been met and how damages can be determined." *Id.* "Thus, although compliance with Rule 7.1 may seem unnecessary when an opposition is unlikely to be filed, service of these documents serves an important purpose of analytically linking the pleadings to the hoped-for default judgment." *Id.*

Ultimately, Plaintiff's failure to file a supporting memorandum of law in support of the Motion for Default Judgment as required by Local Rule 7.1 and Section IV(E) of Judge Irizarry's Individual Rules is sufficient to warrant denial of the Motion for Default Judgment in its entirety.

    **B.**    **Plaintiff failed to comply with Local Civil Rule 55.2(c)**

Plaintiff also failed to comply with Local Civil Rule 55.2(c)'s service requirement by improperly mailing the papers submitted to the Court to the Defendants' place of business rather than their last known address. The Local Rules in the Eastern District require that "all papers submitted to the Court . . . be mailed to the party against whom a default judgment is sought at the last known residence of such party (if an individual) or the last known business address of such

party (if a person other than an individual)." Loc. Civ. R. 55.2(c). Moreover, "[p]roof of such mailing shall be filed with the Court." *Id*. The aim of this rule is to promote "fairness and efficiency" for all parties. *Lopez*, 2022 WL 18809176, at *4 (quoting *Miss Jones, LLC v. Viera*, No. 18-CV-1398 (NGG)(SJB), 2019 WL 926670, at *4 (E.D.N.Y. Feb. 5, 2019), *report and recommendation adopted*, 2019 WL 955279 (Feb. 26, 2019).

Courts in this District routinely deny motions for default judgment based on the failure to comply with Local Rule 55.2. *Lopez*, 2022 WL 18809176, at *4 (citing *Dixon v. Int'l Unified Workforce, Inc.*, No. 18-CV-7191 (LDH), 2020 WL 6140054, at *2 (E.D.N.Y. Sept. 1, 2020) ("Local Rule 55.2 is strictly construed, and failure to comply with the rule is alone a basis to deny the motion for default judgment.")).

Here, Plaintiff mailed the motion papers to Defendants Nag and Lavagnino at their place of business, 455 7th Street, Brooklyn, New York 11215, rather than to their last known residences as required by Local Rule 55.2(c). Dkt No. 13; Compl. ¶ 3. "Generally, failure to show that an individual defendant was mailed the default judgment motion papers at his or her last known residence warrants denying the motion against the individual." *Guanglei Jiao v. Shang Shang Qian Inc.*, No. 18-CV-5624 (ARR)(VMS), 2020 WL 6370148, at *8 (E.D.N.Y. Aug. 11, 2020), *report and recommendation adopted*, 2020 WL 5105063 (Aug. 31, 2020). Nothing in the record suggests that Defendants reside or resided at this address. *See J & J Sports Prods., Inc. v. Vergara*, No. 19-CV-2382 (FB) (VMS), 2020 WL 1034393, at *5 (E.D.N.Y. Feb. 6, 2020) ("Without any representation in the record that [the address to which motion papers were sent] is [defendant's] last known residence, the Court is left questioning whether [defendant] properly received notice of the motion for default judgment against him."), *report and recommendation adopted*, 2020 WL

13

1031756 (Mar. 3, 2020). Therefore, Plaintiff also failed to satisfy the service requirement under Local Rule 55.2(c).

Ultimately, Plaintiff's failure to comply with the requirement under Local Civil Rule 55.2 is sufficient to warrant denial of the Motion for Default Judgment in its entirety.

    **C.    Even if Plaintiff complied with the Local Civil Rules, the deficiencies in the Complaint would render any default judgment award inappropriate at this stage.**

As discussed above, in light of Plaintiff's failure to comply with the Local Civil Rules, this Court respectfully recommends that the Court deny Plaintiff's Motion for Default Judgment. Should the Court adopt this Report and Recommendation, and assuming full compliance with the Local Civil Rules, an underlying deficiency persists: the Complaint lacks sufficient factual allegations to substantiate the application of the Fair Labor Standards Act to the Defendant-employers.

Fed. R. Civ. P. 55 specifies a two-step process for entering judgment against a party that fails to defend: "first, the entry of a default, and second, the entry of a default judgment." *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (citing *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)). In the second step of the default-judgment process, after default has been entered, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b). At this stage, "the Court must accept Plaintiffs' well-pleaded factual allegations as true and draw all reasonable inferences in Plaintiffs' favor." *Hernandez v. Delta Deli Mkt. Inc.*, No. 18-CV-00375 (ARR) (RER), 2019 WL 643735, at *1 (E.D.N.Y. Feb. 12, 2019) (citing *Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 506 U.S. 1080 (1993)).

A court, however, does not need to accept a plaintiff's legal conclusions; instead, it is the court's "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." *Nikolaeva v. Home Attendant Servs. of Hyde Park*, No. 15-CV-6977 (NGG) (RER), 2017 WL 3491964, at *1 (E.D.N.Y. Jul. 19, 2017) (*quoting Rolls-Royce plc v. Rolls-Royce USA, Inc.*, 688 F.Supp.2d 150, 153 (E.D.N.Y. Feb. 18, 2010) (citations omitted)). While a plaintiff's well-pleaded allegations can establish liability in a default judgment, the same standard does not apply to damages. *Lopez v. 1923 Sneaker, Inc.*, No. 18-CV-3828 (WFK)(RER), 2021 WL 1845057, at *4–5 (E.D.N.Y. Mar. 5, 2021) (citations omitted) *report and recommendation adopted*, 2021 WL 1259623 (E.D.N.Y., Apr. 6, 2021). Instead, a plaintiff must show that the compensation sought "naturally flow[s] from the injuries pleaded" and reflects the damages demanded in their pleadings. *Palaghita v. Alkor Cap. Corp.*, No. 19-CV-1504 (ARR) (RER), 2021 WL 4464121, at *4-5 (E.D.N.Y. Aug. 20, 2021), *report and recommendation adopted*, 2021 WL 4463483 (E.D.N.Y. Sept. 29, 2021) (*citing Greyhound*, 973 F.2d at 158); Fed. R. Civ. P. 54(c).

Under both the FLSA and NYLL, there must be an employer-employee relationship for there to be liability. *Liu v. Millenium Motors Sports*, No. 17-CV-06438 (RPK) (RER), 2021 WL 4268136 at *3, (E.D.N.Y. May 24, 2021) ("As a threshold matter, Plaintiffs must establish that a non-exempt employer-employee relationship existed under the FLSA and NYLL.") *report and recommendation adopted*, 2021 WL 3463193 (E.D.N.Y., Aug. 6, 2021); *see also Miguel v. Mi Bella Puebla Corp.*, No. 16-CV-01593 (SJ)(RER), 2017 WL 4838820, at *2-3 (E.D.N.Y. Sep. 6, 2017) *report and recommendation adopted*, 2017 WL 4838761 (E.D.N.Y. Oct. 24, 2017). In addition to showing an employee-employer relationship, a plaintiff must also establish that they

15

were not exempt from FLSA or NYLL protections, and that they were inadequately compensated. *Nikolaeva*, 2017 WL 3491964, at *1-2 (citations omitted).

Here, based on the operative complaint, Plaintiff fails to sufficiently allege that Defendants were employers under the FLSA. As a threshold matter, an FLSA plaintiff must show that the defendants were "employers" according to the statute. Under the FLSA, an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). An employer is subject to the FLSA if the plaintiff employee is either "(1) 'engaged in commerce or in the production of goods for commerce,' (individual coverage)," or (2) employed in an "enterprise engaged in commerce or in the production of goods for commerce" whose "annual gross volume of sales made or business done is not less than $500,000" (enterprise coverage). 29 U.S.C. §§ 203(s)(1)(A)(i)-(ii), 206(a) and § 207(a)(1); *Victoriano Gonzalez v. Victoria G's Pizzeria LLC*, No. 19-CV-6996 (Reyes, M.J.), 2021 WL 6065744, at *6 (E.D.N.Y. Dec. 22, 2021), *report and recommendation adopted sub nom.* 2022 WL 842666 (E.D.N.Y. Mar. 22, 2022) (Irizarry, J.)

The dispositive test for individual coverage under the FLSA looks to whether the plaintiff was an employee "in the 'channels of interstate commerce' as distinguished from [one] who merely affected that commerce." *Xelo v. Mavros*, No. 03-CV-3665 (NG)(MDG), 2005 WL 2385724 at *4, 2005, (E.D.N.Y. Sep. 28, 2005) (quoting *McLeod v. Threlkeld*, 319 U.S. 491, 494 (1943)). For an employee to be to be in the channels of interstate commerce, their work must be "so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity." *Kantor v. Air Atl. Med., P.C.*, No. 19-CV-03597 (EK) (ST), 2021 WL 3888067 (E.D.N.Y. Jul. 7, 2021), *report and recommendation adopted*, 2021 WL 3884193 (E.D.N.Y. Aug. 31, 2021); *see also Walker v.*

16

*Interfaith Nutrition Network, Inc.*, No. 14-CV-5419 (DRH)(GRB), 2015 WL 4276174 at *4, (E.D.N.Y. Jul. 14, 2015) (collecting cases) ("An employee engages in commerce when 'a substantial part' of the employee's work [is] related to interstate commerce.").

Defendants run a website that teaches its visitors about finance through the publication of relevant articles on the site. *See* Compl. ¶ 24. Defendants operate the website out of Brooklyn, New York and earn an income by "receiv[ing] commissions from financial institutions for finding them customers." *Id.* ¶ 24. These two paragraphs, without more, are intended to support the proposition that "Defendant [] has been and continues to be an 'employer' engaged in interstate 'commerce' and/or the production of 'goods' for 'commerce,' within the meaning of the [FLSA]." *Id.* ¶ 6 (quotations in original). But Plaintiff's conclusory allegations are insufficient to warrant a default judgment award.

As to enterprise liability, the allegations in the Complaint fail to show that Defendant CentSai is an enterprise engaged in interstate commerce. While the Complaint asserts that the business runs a website onto which finance articles are posted (Compl. ¶ 24), no additional facts are asserted to assist the Court in distinguishing whether this website is a "passive" website or one where commercial activity is actively and routinely conducted. *See Raj Films (USA) Inc. v. Dishant.com LLC,* No. 08-CV-2715 (ENV) (RML), 2009 WL 4891764, at *4-*5 (E.D.N.Y. Dec. 15, 2009) (noting that, for a "passive" website, the use of the internet has been analogized to an advertisement in a nationally-available magazine or newspaper, and does not without more justify the exercise of jurisdiction over the defendant.). Similarly, although Plaintiff asserts that Defendant CentSai receives commissions from financial institutions for finding customers, that assertion provides no additional color as to the nature of the enterprise—and more specifically—

17

whether the enterprise is one engaged in interstate commerce. *Cf. Citigroup Inc. v. City Holding Co.*, 97 F.Supp.2d 549, 565 (S.D.N.Y. May 31, 2000) (citations and quotations omitted).

And, as to individual liability, Plaintiff alleges that he and "other employees regularly handled and used tools and equipment that were moved in or produce for interstate commerce." Compl. ¶ 7. These conclusory allegations are insufficient to show that Plaintiff was engaged in interstate commerce to the extent required to prove individual FLSA liability. Plaintiff does not allege which tools and equipment were "regularly handled" in the course of his employment and "merely using goods that come from out of state is not enough to show that an employee was engaged in interstate commerce." *Victoriano Gonzalez*, 2021 WL 6065744, at *6.

Further, while Plaintiff purports to regularly interact with Defendants' clients (Compl. ¶ 52), such an assertion, without more, is not enough to substantiate a finding of individual liability. "[I]t is well settled that merely making calls to entities in other states or mailing letters out of state as part of a job is not sufficient to show that an employee is engaged in interstate commerce for purposes of establishing individual coverage." *Id.* at 7; *Owusu v. Corona Tire Shop, Inc.*, No. 09-CV-3744 (NGG) (JO), 2013 WL 1680861 at *4 (E.D.N.Y. Apr. 15, 2013) (collecting cases) ("Evidence that an employee sometimes engaged in an activity that can be considered interstate commerce, such as bank transactions or mail delivery, is not sufficient to show that the employee was 'in the channels of commerce' rather than merely affecting commerce"); *Walker v. The Interfaith Nutrition Network, Inc.*, No. 14-CV-5419 (DRH)(GRB), 2015 WL 4276174, at *4 (E.D.N.Y. July 14, 2015) (finding plaintiff's allegations that they routinely made phone calls out of state insufficient to show the employee was engaged in interstate commerce).

Thus, even had Plaintiff complied with the Local Civil Rules, the Complaint still contains deficiencies that would lead the Court to deny Plaintiff's Motion for Default Judgment.[8] Plaintiff is advised that this Report and Recommendation may not contain an exhaustive recitation of the deficiencies in their moving papers. Plaintiff is cautioned to re-examine all of the rules applicable to default judgment motions and to comply strictly with each of them.

## IV.   Conclusion

Accordingly, the Court respectfully recommends that Plaintiff's Motion for Default Judgment be denied without prejudice and with leave to renew, addressing the deficiencies discussed above, and in compliance with the Court's Local Rules.

A copy of this Report and Recommendation is being electronically served on counsel. This Court directs Plaintiff's counsel to serve a copy of this Report and Recommendation by overnight mail and first-class mail to Defendants and to file proof of service on ECF by December 27, 2023.

Copies shall be served at the following addresses:

CentSai Inc.
Attn: Arindam Nag
455 7th Street
Brooklyn, New York 11215

CentSai Inc.
Attn: Doria Lavagnino
455 7th Street
Brooklyn, New York 11215

---

[8] Plaintiff's failure to sufficiently plead his FLSA claims undercuts the Court's jurisdiction to rule on the remaining state law claims, as this case is in federal court based on federal question jurisdiction and there is no diversity among the parties. *See* Compl. ¶ 20); *Hernandez v. Main Glatt Corp.,* No. 12-CV-986 (SJ) (VVP), 2014 WL 1310291 at *3-4 (E.D.N.Y. Mar. 14, 2014). While the Court may exercise supplemental jurisdiction even when there is no other basis for federal jurisdiction, "the Second Circuit has made the point that where dismissal of the federal claims occurs before trial the related state law claims should be dismissed as well." *Id.* (citing *Castellano v. Bd. of Trustees*, 937 F.2d 752, 758 (2d Cir. 1991)).

Any objections to this Report and Recommendation must be filed within 14 days after service of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). *See also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days). Any requests for an extension of time for filing objections must be directed to Judge Irizarry. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010); *Kotlyarsky v. United States Dep't of Just.*, No. 22-2750, 2023 WL 7648618 (2d Cir. 2023); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:     Brooklyn, New York
           December 21, 2023

                                                   */s/ Joseph A. Marutollo*
                                                   JOSEPH A. MARUTOLLO
                                                   United States Magistrate Judge